**STATE ex FOSTER, Relator-Plaintiff v. EVATT, Tax Commissioner et, Defendants.**

Ohio Appeals, Second District, Franklin County.

No. 3325. Decided August 2, 1943.

Hart, McHenry & Jones, Canton; Matthew L. Bigger, Columbus, for plaintiff.

Thomas J. Herbert, attorney general, Columbus; Perry L. Graham, asst. atty. general, Columbus; James N. Linton, special asst. atty. general, Columbus, for William S. Evatt, Tax Commissioner et, defendants.

## OPINION

BY THE COURT:

This matter is before the Court on an application for a permanent writ of mandamus against the defendants, and comes before us upon the several pleadings, the report of the referee and the arguments of counsel. The second amended petition was filed May 17, 1941. The original petition was filed on the 20th of January, 1941.

The relator recites the fact that he is and always has been a taxpayer and a resident of the City of Columbus; that William S. Evatt is the qualified and acting Tax Commissioner of the State of Ohio.

It is averred that the Great Atlantic & Pacific Tea Company and The Kroger Grocery & Baking Company are corporations doing business in the State of Ohio and as such were vendors within the meaning of §5546-1, effective January 1, 1935; that under §5546-2 it was provided that for the purpose

of raising revenue, an excise tax was levied on every retail sale made in the state of Ohio of tangible personal property on and after the first day of January, 1935, and ending on the 31st day of December, 1935, with certain enumerated exemptions; that under §5546-2 it is further provided that for the purpose of proper administration of the act and to prevent evasion of the tax, it shall be presumed that all sales made in the state are subject to the tax until the contrary is established.

It is alleged that under §5546-9a, it is provided that in case any vendor failed to collect the tax imposed under said act, or having collected the tax, failed to cancel the prepaid tax receipts he shall be personally liable for such amount as he failed to collect or for the amount of the tax receipts which he failed to cancel, and that in such cases the Commission has power to make an assessment against such vendor based upon information in its possession or which should come into its possession.

It is further averred that for the sole purpose of securing information upon which to base an assessment the auditing department of the sales tax section, under direction of R. C. Grove, chief auditor, and at the expense of thousands of dollars, the State made a complete audit for the year 1935 of the books and the retail sales made by more than 2000 retail stores operated in Ohio by the Kroger Grocery & Baking Company and the Atlantic & Pacific Tea Company; that said audit was complete and a finding based thereon was delivered to the Tax Commission; that the records are in the possession of the Commission; that the Grocery Company was personally liable under the provisions of the sales act for the period of January 27th to September 7, 1935, in the amount of $164,612.17, and that the Atlantic & Pacific Tea Company was personally liable for the period of January 27 to December 28, 1935, in the amount of $276,101.28; that the required information in reference to both companies is in the possession of and available to the defendant during the year 1935 and since; that although the Tax Commissioner under the act is given the power to assess the amount of personal liability against said vendors, he has arbitrarily failed and is now arbitrarily refusing to perform the duty prescribed and to exercise the power residing in him to make the assessment for such personal liability so established, and that his act therein constitutes a gross abuse of discretion; that by reason of the failure of the defendant to exercise the power given him, the revenues of the State have been lessened to the amount of the uncollected taxes due

from said vendors, and that this relator and others similarly situated have been prejudicially and irreparably damaged and have no other adequate remedy at law.

The prayer of the petition is that a writ of mandamus issue against the defendant requiring him to make an assessment against the Great Atlantic & Pacific Tea Company and The Kroger Grocery & Baking Company as vendors under the Sales Tax Act, effective January 1, 1935 (§§5546-1 to 5546-23, Inc.), based upon the information now in the possession of said defendant as provided in §5546-9a, GC., effective January 1, 1935; that costs may be assessed including an allowance for counsel fees as herein set forth and for such other relief in the premises as may be just and proper.

While the prayer is that the writ issue against the defendant, and there are other defendants named, it would appear that the prayer is that the writ issue against William S. Evatt, Tax Commissioner of Ohio.

### ANSWER.

The defendant Evatt by way of answer admits formal matters, but specifically denies that he ever had in his possession or control, or that he has any knowledge of the existence of any information tending to show that the two companies collected moneys purporting to be in payment of sales tax from customers during 1935, for which either failed to cancel prepaid sales tax stamps or pay such moneys into the state treasury, or that either of them made taxable sales for which they collected revenues not paid into the treasury.

Defendant specifically denies that the auditing department under the direction of Grove made an audit for the year 1935 supporting the finding that the Grocery Company was indebted in the amount of $164,612.17, or any other amount, or that the Tea Company was indebted in the sum of $276,101.28. or any other amount; that he has no knowledge of the existence of any information of the nature alleged in the petition.

It is alleged that the Tax Commission delivered to the Department of Taxation at the time of its creation certain records which reflect that such Commission made a determination and finding that no moneys were due from either company for the year 1935; that the Tax Commissioner has no right to review the determination of the former Tax Commission,

which were not then pending, but which had been completed and that no appeal was prosecuted.

It is alleged that the defendant has no knowledge of facts that would justify a determination that the moneys are due from said corporations for taxes during the year 1935, and that even if the Court should determine that he has the power to make an assessment upon the existence of facts sufficient to justify, he could not in good faith make such an assessment. Other allegations are denied.

As a second defense it is alleged that in an action brought in the Supreme Court bearing No. 27,500, wherein the plaintiff and defendants in this case were the same and the issues were litigated, that the Supreme Court decided the issue in favor of the defendant and rendered final judgment and dismissed such proceedings, and that by reason thereof the plaintiff was estopped.

## REPLY.

To this answer a reply is filed, denying the allegations of the first defense except those which admit the truth of the matters set forth in the plaintiff's second amended petition. The allegations of the second defense are denied.

On February 18, 1942, the cause came on for hearing on the second defense and this Court then found against the defendant upon the question of res judicata, and that the judgment of the Supreme Court in State, ex Foster v Miller was not a bar to this present suit. No appeal was prosecuted from that judgment, and it is no longer an issue in this controversy.

It was ordered that the cause then proceed to trial upon the second amended petition and the first defense only.

Thereafter, on March 25, 1942, the plaintiff made an application for the appointment of a special master commissioner, to which the cause shall be referred, and the Court ordered that the cause be referred to Carrington T. Marshall, who was appointed special master commissioner with the powers of a referee in chancery, to take the testimony and report to the Court his conclusions of law and fact involved in the cause.

Thereupon the matter was heard by the referee who made a report to this Court on December 8, 1942, and a motion was made by the plaintiff that the Court confirm said report of the referee, both as to findings of fact and conclusions of law, and that judgment be entered in favor of the relator in conformity with the report of the referee. The respondent moves that the report be overruled.

## REPORT OF THE REFEREE.

The report of the referee recites conclusions of fact and of law after cause had been heard by him on the evidence. The issues are stated by the referee as the same are here stated. The referee gives a synopsis of the testimony of some of the witnesses, which may be now alluded to. It is stated that the defendant, Evatt, during the course of his testimony, made it clear that he did not know that audits had been made, and that he never examined them, and did not know their contents, and that he had made no detailed study of the reports filed by the corporations. It is stated that the real defense asserted by the defendant is in the status of sales tax law as originally enacted, and the determination made by one of the members of the Commission in 1936, in which it is claimed that there was a finding that no moneys were due from said corporations for tax deficiencies for the year 1935. The defendant as a witness claims that there is no machinery provided in the law, as it existed in 1935, for making any finding of tax deficiencies against any vendor unless the Commission could prove that specific taxable sales were made upon which no tax was collected. The defendant, Evatt, claimed that if the vendors did not keep accurate book of accounts showing individual taxable sales, that no tax deficiency could be assessed, and that the Commission was powerless and that no matter how false the returns might be, the taxing authorities were without remedy.

It is reported by the Referee that the defendant and other witnesses connected with the Commission have testified that the levying of a tax on specific sales is not only impractical, but impossible, against vendors who did not keep records; that until the amendment of §5546-12a, the Commission was without power to apply a weighted rate, and that there is no authority to levy a deficiency tax against any vendor unless the Commission is able to prove a specific sale upon which no tax has been paid.

The Referee examines at length the evidence produced on behalf of the taxing authorities and criticizes the position taken by them. He also comments upon the opinion of the Attorney General. In re Assessment of Delinquent Sales Tax, Opinion Atty. General, Vol. II, 1936, p. 1134, and asserts it to be a fact that the opinion does not deny the right to the Commission to value the property for purposes of taxation

where no specific record has been kept of the individual sales. It is asserted that the referee is unable to find anything in the opinion of the Attorney General which condemns the weighted average percentage rate, but that such average rate may be used as information.

The referee proceeds at length to analyze the testimony of the various witnesses appearing before him. It would be gratifying if we had space enough to give a detailed examination in this portion of the referee's report. He summarizes the matter in twenty-eight findings of fact and four conclusions of law. We will attempt to condense his findings of facts within a limited space, and in doing that will recite his findings in narrative form without a numerical designation, except we will follow the order in which he has set them down.

The two companies whose tax is in question where vendors within the meaning of the tax law, and neither kept a record of individual sales. They kept books showing purchases of taxable and non-taxable merchandise and the examiners were able to separate the amount of taxable from the nontaxable. An audit was made of the business of the Kroger Company, beginning January 27, 1935, and ending September 7, 1935, which audit became "information" that that vendor had sold taxable merchandise during that period in the sum of .$29,291,972.00 and that prepaid stamps were cancelled during the same period in the sum of $735,000.00, plus, the same being approximately 2½ per cent. of the taxable sales. 3 per cent of such sales would be $878,000.00, plus, and after deducting the stamps cancelled, the balance is $143,000, plus, which, with 15 per cent penalty is increased to $164,000, plus.

The audit of The Atlantic & Pacific Tea Company in the same method discloses that the stamps cancelled were 2.47 per cent of the taxable sales of $1,335,000.00, plus, which with 15 per cent penalty added amounts to $270,000.00, plus. Pursuant to statutory authority the Commission promulgated a code of rules, a part being instruction to examiners, among which were rules to the effect that in an audit of vendors who had not kept a record, the examiner may compute the amount for the period under investigation. As to those vendors whose business was large in volume and the sales small and where there was no record kept, the rule provided that all the vendors' invoices should be taken, and from that it be determined what is the average markup in the vendor's business. In se-

lecting the items for this markup the examiner should examine the vendor to determine which items constituted the largest percentage of his sales, which should then be applied to the total purchases and this should represent the gross income for the period. Examiners should be careful to compute the per cent markup on the basis of the cost and not of the sale price.

Another option relates to unit sales, not pertinent. Detailed instructions for making audits were found in schedules "B" and "C". Where an examiner has completed an audit and finds it necessary to make an assessment, three options are provided for arriving at the assessment against the vendor, which are enumerated.

Finding No. 18 is to the effect that the weighted rate·for Kroger, and other like business, was arrived at by a study of the statistical division of the sales tax department in conjunction with the reports known as "spot check" made by checking at various times on various days and hours the actual sales made by the vendor and the tax applicable thereto.

A number of the examiners testified that the rate arrived at was fair and should be approximately 3.30 per cent of the taxable sales, including sales under 9 cents, upon which there is no tax.

The audit of the Kroger Company for the period from January 27, 1935, to September 7, 1935, was complete to the point where it became the duty of the examiner to execute an actual rate chart, and by the use of percentages, estimate the tax deficiency. The audit of the Tea Company for the period from January 27 to December 26, 1935, is equally complete with the Grocery audit and equally subject to the rules stated.

A large force was engaged in making these sales for both companies. Vendors in the state of Ohio were classified into two classes according to their manner of doing business: (1) Vendors of unit sales; and (2) vendors who kept inadequate records. There were between 200,000 and 250,000 vendors of unit sales and between 40,000 and 50,000 vendors who kept inadequate records. The unit sale vendors could be easily audited and their taxes ascertained. Approximately 5000 of the vendors who kept inadequate records were checked, and as the result there was assessed and paid into the treasury deficiency, taxes amounting to approximately $187,000.00, all of which was later voluntarily refunded to them by the Tax Commission. The total sales tax collected for the year 1935 was approximately $50,000,000.00.

After the audit, the business of the Grocery Company was completed and recapitulated and before an actual rate chart had been executed, Mr. Dargusch, a member of the Commission, sent employees to Cincinnati to consult the Grocery Company. Apparently quite a number of unnamed employees of the Commission attended this meeting, of which no report was made. On June 5, 1935, a letter was addressed by Mr. Dargusch to the Attorney General, requesting an opinion on a number of questions, which opinion is an exhibit dated July 24, 1936, to which reference has been made. (Opinion A. G. Vol. 11, page 1134.) After June 5, 1936, no further audit was made of vendors who kept inadequate records, and no further assessments were made against that class of vendors for the business of the year 1935, that class being placed under a voluntary basis.

The foregoing is a synopsis of the finding of facts and is of course greatly curtailed and can only be fully understood by reading the complete report of the referee.

## CONCLUSIONS OF LAW.

The conclusions of law are as follows:

(1)  The present tax commissioner, the defendant, by virtue of §1464 GC, is the successor of the former commissioner and by virtue of sub-section 3 has power to review, re-determine or correct not only his own previous orders, but also those of the former tax commission.

(2)  The rules promulgated by the tax commission were within the authority conferred upon the commission by several sections of the General Code, and the rules are a reasonable exercise of that authority.

(3)  The audits made by the examiners appointed by the commission were made pursuant to the rules promulgated.

(4)  The audits of 1935 sales of the Kroger Grocery Company and the Great Atlantic & Pacific Tea Company in the possession of the defendant constitute "information" within the meaning of §5546-9a, which imposes upon the defendants the clear legal duty to execute an "actual rate chart" to serve upon said vendors notice of assessment, leaving to the vendors their legal remedies to petition for reassessment. The referee recommends that the Court enter a judgment in favor of the plaintiff, ordering that a writ of mandamus be issued against the defendant, Evatt, to execute an actual rate chart, and to serve upon vendors, the two companies, notices of assessments and thereafter, to take such additional administrative steps

as may be necessary to endeavor to collect final deficiency assessments pursuant to the audit heretofore made under the rules of the Commission.

We have very interesting briefs in support of and in opposition to the motion to confirm the report of Judge Marshall, Referee.

The sworn reports of the Kroger Company for the entire year 1935 show total sales in the sum of $51,948,804.11 with sales not taxable in the amount of $7,890,907.80, leaving $41,057,896.31 of sales subject to the tax upon which prepaid receipts have been cancelled in the sum of $1,057,819.03. The tax collectible at 3 per cent would amount to $1,321,736.88 leaving a deficiency based on 3 per cent of $263,917.85 which by an addition of 15 per cent penalty is increased to $303,505.52. If a per cent of 3.3, plus penalty of 15 per cent, be used in computation, the deficiency will be increased to $455,505.27.

Another computation is made from an audit of the books and records of the Kroger Company for the period from Jan. 27, 1935, to September 7, 1935, which shows the amount of taxable sales for that period to be $29,291,982.07 upon which prepaid receipts are shown as cancelled in the sum $735,618.54 which shows a deficit at 3 per cent with a penalty of 15 per cent of $164,612.17 which on the same basis but at 3.3 per cent, plus penalty of 15 per cent, shows a deficit of $265,669.40.

As to the Atlantic & Pacific Tea Company, the sworn reports for the year 1935 show total sales of $47,583,945.29 of which $35,430,256.91 are taxable upon which cancelled prepaid receipts are shown in the sum of $1,024,870.36, the tax collectible at 3 per cent, being $1,062,907.71, leaving a deficiency based upon 3 per cent of $38,037.35 which with 15 per cent penalty added is $43,742.95.

The total amount of taxable sales shown by an audit of the books and records of the Atlantic & Pacific Tea Company for the year 1935 is $44,442,342.12, upon which prepaid receipts are shown as cancelled in the sum of $1,098,118.44, which shows a deficit based upon 3 per cent with the penalty of 15 per cent added for the year amounting to $270,424.59 which on the same basis but at 3.3 per cent, with 15 per cent penalty, shows a deficit of $423,750.68.

Counsel for respondents have claimed in written and oral arguments that certain of the findings by the Referee are not supported by the weight of or any evidence submitted to said Referee. We have had filed with us the record of the evidence

taken before the Referee, designated bill of exceptions, the same being filed on January 7, 1943. It contains almost a thousand pages of typewritten record. We have examined the same, not in complete detail, but with such detail as justifies our conclusion that the several findings, with the modifications noted and required by this opinion, are supported by sufficient evidence.

Counsel for defendants rely upon the Supreme Court decision in the case of **State, ex rel. Foster v Miller, 136 Oh St 295.** It is there held that a retail vendor is not a tax collector or a trustee of the State, is not amenable to the process of mandamus and that such writ will not compel the observance of law generally, but will be confined to commanding the performance of specific acts especially enjoined by law to be performed. The third syllabus of the case is to the effect that in an action in mandamus a court will not substitute its discretion for that of an administrative officer in the exercise of his authority, and in the absence of the allegation and proof that an officer or commission charged with the duty of collecting sales taxes has refused arbitrarily to collect the amount due on the **specific** taxable sale or sales, the writ of mandamus will not lie.

This Court has already ruled after hearing upon evidence that this case in the Supreme Court is not res adjudicata of the issue here. As before stated, it is quite apparent that the first and second syllabi were correct determinations of the issues presented to the Supreme Court. As to the third syllabus there arises the question if it was responsive to any proposition of law presented to the Court by the pleadings and the facts, but after having given the matter close scrutiny we are of the opinion that in using the term "specific taxable sale or sales", the Court did not intend to say that it was necessary to prove "individual" sales. There is a distinction in the two terms which should be applied in the determination of this particular issue. The amount due on "specific taxable sales" could well be the remainder as shown after deducting the exempted sales from the gross sales, leaving the net amount of "specific taxable sales". The matter was before this Court at the time of the oral argument and counsel were questioned as to how it would be possible to have any check on vendors who kept no records except by having an inspector standing at each cash register during all business hours, checking each

individual sale of every business house throughout the State. There are more than 2000 Kroger stores in the state and a large number, possibly more, of the Atlantic & Pacific Tea Company stores. The last paragraph of §5546-2 places upon the vendors the burden of showing the payment of a proper tax, and provides "for the purpose of the proper administration of this act, and to prevent the evasion of the tax hereby levied, "it shall be presumed that all sales made in this state during the period defined in this section are subject to the tax hereby levied until the contrary is established". If the Supreme Court in the third syllabus of the Foster case meant to require the state to prove in detail each specific taxable sale or sales before the writ would lie, it is manifest that the purpose of the act would fail on account of impossibility of complying with the same. However, if we interpret the phrase found in the third syllabus of the Miller case "due on a specific taxable sale or sales" to mean the total of the individual sales made of all taxable articles, the way is open to ascertain this total and the amount due thereon by the simple process of determining from the report of the corporations their total sales and by a deduction of the amount of prepaid sales tax, arriving at the amount of the unpaid balance.

It is impossible to conceive that if the Legislature had the purpose of collecting the sales tax on the innumerable items of small amounts, that it would have required the state to prove the unpaid tax on each individual item, an impossible burden. We prefer to interpret the third syllabus of the Foster case so as to make the act effective rather than by a narrow interpretation preventing its operation.

A reading of the testimony of the witnesses connected with the tax division, including that of Mr. Evatt, shows that to determine the tax due on each individual sale was impractical and in cases where there were millions of sales the burden would have rendered the business unprofitable if a record of all individual sales were required to be kept. It is obviously impossible for the taxing authorities to check individual sales where it is conceded that no records of such sales were kept.

Without endeavoring to give either the record or to quote the provisions of the various sections, we cite as particularly applicable, §§5546-1, 2, 3, 5, 8, 9a, 12, 15, 17 and 1465-1, GC et seq. We believe we can safely say that the purpose of the Legislature was to secure necessary revenue from sales tax, but that there has been the real recognition of the fact

that to collect a small tax from many individual sales, there must necessarily be some workable plan within the limits of the statutory rule by which the tax officials can equitably determine the amount of tax to be paid by the retail purchasers, or the amount of cancelled sales stamps that must be accounted for by the vendor.

We are not in harmony with the view of the state, that, inasmuch as this matter presents many difficulties, it is to be practically abandoned and the taxpayer left to his own devices, so that the burden of collecting may be lightened.

The collection of taxes has assumed the greatest importance at this time, and the taxpayer will not be satisfied if he pays in full, while others escape a substantial part of the burden.

In the case at bar the matter seems to have bogged down on the theory that the provisions of the statute cannot be successfully enforced.

Much has been said about the effect of the Attorney General's opinion upon which the Tax Commission originally relied in its action to forego any further attempt to enforce the personal liability of the vendors for sales tax under §5546-9a GC. This opinion was rendered in answer to two questions. It specifically answers the first question propounded to the effect that the Commission may not employ the weighted average percentage rate for the particular trade or business of the vendors alone to determine the specific amount of tax due from said vendors. In concluding the answer to the first question, the Attorney General said:

"Although under the broad language of §5546-9a, * * *, the Tax Commission is not limited to any particular kind of evidence in determining the delinquency or deficiency assessment, if any, to be made against the vendor, the assessment made by it must be based upon facts and information as to the particular vendor rather than upon a weighted average which may represent the percentage of no single vendor in computing such average."

The answer to the second question is, that the evidence secured by spot checks may be used by the Tax Commission as information under §5546-9a GC, but may not be the sole basis of an assessment for delinquent sales tax but may be used with "any (other) information within its possession or that shall come into its possession", in determining the question.

In this case there are four sources of information respecting a determination of the amount of tax representative of the personal liability of the vendors. (1) The St-10 reports which contain detailed information of the sales of the vendors from the total of which, in all instances, are deducted the sale price of all items specifically exempted by §5546-9a, GC, but including the amount of sales on items retailing at 9 cents or less. In some instances the amount of these sales also are deducted. (2) The reports of the auditors of the Tax Commission made up from the books and records of the vendors exhibiting substantially the same information as found in the St-10 reports, deducting sales representative of exempted items other than sales of less than nine cents. It is interesting to note that, although the total business appearing to have been done by the vendors according to the auditors' reports and according to the St-10 reports is very large and made up of great numbers of items, the total amount of business done as appearing in both of these sets of reports approximate the same. (3) The spot checks made by the representatives of the Tax Commission and conducted in the most detailed manner and with specific reference to the various types of businesses subject to the sales tax, and with particular reference to the class of business in which vendors are engaged. (4) The mathematical probabilities demonstrated by the bracket tax rates set out in §5546-2 GC.

It is obvious that all of these numbered items were available to the Tax Commission, and that had it given notice of assessment to the vendors based upon composite consideration of all of them, it would not have offended or disregarded the opinion of the Attorney General because, obviously, it had information over and beyond that which was before it as a result of its spot checks. Likewise, the referee in this case, and the Court have access to and must take advantage of all of the information provided by the aforenumbered items. The referee's report does not rely solely upon the spot checks because the result there obtained was that the fair tax against the vendors in this case would have been 3.3%. The rate fixed by the referee is 3%.

There is no disagreement among counsel for the parties, nor the parties themselves, as to the applicability of §5546-9a GC, which fixes personal liability against the vendors for failure to collect the tax imposed, or having collected tax, failure to cancel the prepaid tax receipts in the manner prescribed by the Act, and, further, that the last paragraph of

§5546-2 GC providing that "it shall be presumed that all sales made in this state during the period defined in this section are subject to the tax hereby levied until the contrary is established" has application and places the burden upon the vendor when notice of assessment has been properly given to establish that it is not subject to the tax. It is urged, however, that although full application be given to the section, the Tax Commission has no means of determining the rate upon which the tax shall be computed because it is a transaction tax varying with the bracket in which the transaction is to be found.

It is not necessary in this case to give application to the last paragraph of §5546-2 GC as to all sales made by the vendors herein, because all reports demonstrate that there is available the total taxable sales, excepting only the amount of sales representative of items retailing at prices under 9 cents. Is this an insuperable barrier to a fair determination of the amount of the tax due on specific sales? We think not.

We have the sum total of the sales appearing in the St-10 reports and in the reports of the auditors of the Tax Commission and by virtue of the itemization and by the presumption indulged by the last paragraph of §5546-2 GC the total taxable sales. Obviously, this is made up of specific taxable sales. This must be true because, if all the sales are under the statute presumed to be taxable sales, then all the parts which make up the total must be presumed to be taxable sales.

Let us then examine the mathematical probabilities under the rates fixed in the various brackets in §5546-2 GC.

Upon specific sales of $1.00 or less, the tax would equal or exceed 3%, in all instances, except in sales from 34c to 40c and in sales from 67c to 70c. In the 91 units from 9c to $1.00 there are but 11 units wherein the tax would be less than 3%. In the units above $1.00 the percentage would be the same. On a sale of 9 cents the percentage is more than 11%. On a sale of 10c the percentage is 10%; on sales from 11c to 19c, inclusive, more than 5%; 20c to 30c more than 3%; 41c to 50c, 4% or more; 50c to 66c more than 3%; 71c to 75c more than 4%; and 76c to 99c more than 3%. The lowest tax percentage is 2.50 on a sale of 40c but on 41c it is 4.87%; on 70c it is 2.857% but on 71c it is 4.225%. The referee finds that The Great Atlantic & Pacific Tea Company cancelled stamps in approximately 2.47% of the taxable sales, The Kroger Company, in 2.50% of its taxable sales.

Upon the spot checks of grocery concerns, as we have heretofore indicated, it developed that upon all taxable sales and including exempt sales up to 9c, the tax averaged 3.30%. So that, if it were possible to break up the total amount of taxable sales into specific sales and compute the tax thereon, the sum total of the tax so computed would, in all probability, exceed the amount of tax found to be due upon the basis of 3% of the total taxable sales appearing in the St-10 reports, or in the reports of the auditors of the Commission, indulging the presumption required by the statute. This conclusion, independent of the presumption of the statute, is reached by the Attorney General in this opinion and, likewise, is testified to by the defendant, William Evatt, Tax Commissioner.

How then, can it be maintained by the defendants that a prima facie case, at least, is not made against the vendors which is, under the statute, sufficient basis for an assessment. The mere fact that in reaching the total tax due, the mechanics employed by the state may not be in strict conformity to the letter of the bracket part of §5546-2 GC, does not change the fact that it is in complete harmony with the last paragraph of the section and the spirit of the whole act, and more important, will not, in probability, require the vendors to pay any tax that they do not owe. If the vendors insist that they are taxed in a sum in excess of that which would be due upon a strict computation of tax upon specific sales, the obligation is upon them, under the statute, to show it and they are clearly accorded this privilege by §5546-9a GC.

Let us assume that a grocer does $10,000.00 worth of business, but accounts for only one-half of 1 per cent of total sales. Under the statute there is a presumption that all of these sales are taxable. The State has no means of determining and separating the specific sales. Can it be the intent of the law that in this situation the Tax Commissioner may not make an assessment for sales tax due against this vendor? We do not believe that such is the intent of the law. If this vendor was given notice of his assessment and upon application for reassessment established that of the $10,000.00 total sales $5000.00 were exempt under the ten specific exemptions of the statute and not taxable because of sales under nine cents, could it then be successfully urged that he was not liable in excess of 1 per cent of the remaining $5000.00 taxable sales? We believe not.

As the Referee well says: "The fact is that it was **possible** for vendors to keep detailed records, but **impossible** for examiners to accurately audit records which were not accurately kept in detail". That data for such detailed records was available to the vendors appears from those St-10 reports which are complete in every detail and set forth all exemptions allowable under the statute.

The intendment of the last paragraph of §5546-2 GC is plain and the burden there is clearly placed upon the vendor. Once the Tax Commission has acted upon any information "within its possession or that shall come into its possession" and made an assessment upon such information, the burden is upon the vendor to prove that such assessment includes tax upon the sale price of any one of the ten exempted articles set out in the section or includes tax upon retail sales of articles wherein the price is less than 9c, or both. If the Act is not so construed then any vendor could, by the mere subterfuge of failure to keep any itemization of exempted sales or sales under 9c, avoid any personal liability whatever for sales tax because thereby the state would be prevented from making any determination of the amount due on specific individual sales, the price of which brought them within the taxable brackets of §5546-2 GC.

It has been urged that to grant the writ of mandamus in the instant cause would be an invasion of the discretion vested in the defendant, the Tax Commissioner, under the law. We do not conceive that this case upon the facts presents a question involving the field of discretion of the Tax Commissioner. It is one where the former Tax Commission has, in interpreting the opinion of the Attorney General, concluded that, under the facts, the law would not authorize any further procedure on his part, and the present Tax Commissioner has followed the ruling of his predecessor. In taking this position it is not predicated on any exercise of discretion but upon interpretation of the law. If the Tax Commissioner is mistaken in his conclusion of the law, clearly it becomes his obligation to act under the law in the light of its true meaning. We have recognized this principle of law in **State ex Breidigan v Industrial Commission, 36 Abs 160,** 4th syllabus, opinion by Judge Barnes, and concurrence by other members of the Court as now constituted. It is our conclusion that the findings generally of the referee should be approved and confirmed with the following modifications:

64

Finding of fact No. 6 obviously is in error, probably a typographical mistake, as to certain figures therein set out. It should read,

"An audit was made of the business of the Great Atlantic and Pacific Tea Co. for the period beginning Jan. 27, 1935. to Dec. 28, 1935, which audit became information that that vendor had sold taxable merchandise during that period in the sum of $50,145,637.10, and that the exempt sales amounted to $5,703,294.98, and that the net taxable sales for the period was $44,442,342.12 and that the stamps cancelled were $1,098,118.44 which is approximately 2.47% of the taxable sales."

The reference to the obligation of the examiner in finding of fact No. 20 to execute an "Actual Rate Chart" and, likewise, the conclusion of law under No. 4 that there devolved upon the defendant the clear legal duty to execute an "Actual Rate Chart" should be deleted. The order of this Court will be made with these modifications in mind. With these exceptions the motion to confirm the finding and report of the Master will be sustained and the motion to disaffirm the report will be overruled.

A writ of mandamus may issue as prayed directing the defendant, William S. Evatt, Tax Commissioner, to make an assessment against the vendors herein, and to give notice thereof to said vendors, based upon information in his possession, as herein defined, and computed upon the basis of 3% of the sales shown to be taxable and, thereafter, to take such additional administrative steps as shall be necessary to collect final deficiency assessments under the Sales Tax Act as found in House Bill No. 134, §5546-1 et seq., **GC, 115 Ohio Law, pt. II**, **pages 306 et seq.**, and in accordance with the finding and report of the Master as herein confirmed.

BARNES, P. J., HORNBECK and GEIGER, JJ., concur.